UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MAY YANG,                                               Case No. 19-CV-2669 (NEB/DTS)

          Plaintiff,

v.                                                                  ORDER ON MOTIONS

ROBERT HALF INTERNATIONAL, INC.
aka ROBERT HALF CORPORATION aka
ROBERT HALF LEGAL, MARCIA A.
MILLER, and THERESA HODNETT,

          Defendants.

In this employment discrimination action, defendants Marcia A. Miller and Theresa Hodnett ("individual defendants") moved to dismiss several of the counts alleged against them. (ECF Nos. 51, 58.) After the parties completed briefing, but before the hearing, plaintiff May Yang moved to file a fourth amended complaint. (ECF No. 72.) The individual defendants and corporate defendant, Robert Half International, Inc. ("RHI"), all opposed the motion to amend. The Court heard argument on both motions. For the reasons that follow, the Court denies the motion to amend and grants the motions to dismiss.

BACKGROUND

On a motion to dismiss, the Court accepts as true all factual allegations in the complaint. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). The

Court draws the following background from the third amended complaint.[1] (ECF No. 32 ("third amended complaint," "TAC," or "complaint").)

Yang, an attorney, was employed by RHI; Hodnett and Miller were her co-workers. (TAC ¶¶ 9–15.) Yang claims she was constructively terminated from RHI due to the actions of Hodnett and Miller, neither of whom had supervisory authority over her. (*See* TAC ¶ 99; *see generally* TAC Counts 16, 17.)

After Yang's separation from employment, she filed a discrimination claim with the EEOC. (TAC ¶ 12.) She was issued a right-to-sue letter and brought suit against RHI, Hodnett, and Miller. (*See generally* TAC.) Hodnett now moves to dismiss counts 1, 7, 8, 14, and 15 as alleged against her. (ECF No. 51.) Yang stipulated to the dismissal without prejudice of counts 7, 8, and 14 against Miller. (ECF No. 49.) Miller now moves to have counts 1, 13, and 15 dismissed as well. (ECF No. 58.)

After briefing on both motions to dismiss was completed, Yang moved to file a fourth amended complaint. (ECF No. 72.) The proposed fourth amended complaint seeks to assert (1) a 42 U.S.C. § 1981 claim against all the defendants, (2) a Title VII claim against RHI, (3) claims for hostile work environment under the Minnesota Human Rights Act against RHI, (4) a defamation claim against RHI, and (5) a claim of

---

[1] The factual allegations in the third amended and proposed fourth amended complaint are identical. (*Compare* ECF No. 32 *with* ECF No. 75-2.) Because the Court denies the motion to amend, the third amended complaint is the operative complaint and the Court draws the facts from that complaint.

2

"negligent/intentional" infliction of emotional distress against RHI. (*See generally* ECF No. 75-2 ("PFAC").) In the proposed fourth amended complaint, Yang also seeks to change the claim for tortious interference with a contract to tortious interference with prospective economic advantage. (*See id.* at 39–40.) All the defendants oppose the motion to amend.[2]

## ANALYSIS

**I.  Motion to Amend under Rule 15(a)(2) of the Federal Rules of Civil Procedure**

On a motion to amend, the Court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A court properly denies a motion to amend "only in limited circumstances such as when the amendment will cause or is the result of 'undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility.'" *ecoNugenics, Inc. v. Bioenergy Life Sci. Inc.*, 355 F. Supp. 3d 785, 790 (D. Minn. 2019) (quoting *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007)).

### A. RHI: Failure to Meet and Confer

RHI's first opposition to the motion to amend is an allegation that Yang has not complied with the local rules requiring a meet-and-confer before filing a motion. For her part, Yang claims that emails sent in May 2020 satisfy the meet-and-confer requirement.

---

[2] After oral argument, Yang's counsel wrote a letter to the Court, asking to amend the proposed fourth amended complaint to cure deficiencies discussed at the hearing. (ECF No. 85.) This correspondence is not a proper motion under the Federal Rules of Civil Procedure or the Local Rules, and the Court will not consider it.

3

(ECF No. 74.) At the hearing, Yang attempted to bolster this argument by introducing communications not contained in the record.

A court may deny a motion when the parties fail to meet and confer in good faith prior to filing the motion. *Management Registry, Inc. v. A.W. Cos., Inc.*, No. 17-CV-5009 (JRT/KMM), 2019 WL 2024538, at *3 (D. Minn. May 5, 2019). When it appears that a meet-and-confer would not have resolved the issue, a court may excuse the failure. *See, e.g.*, *Foster v. Litman*, No. 19-CV-260 (JNE/ECF), 2020 WL 39192, at *4 n.4 (D. Minn. Jan 3, 2020) ("While the Court warns Plaintiff that future motions to compel should not be brought prior to at least attempting to meet and confer and the failure to do so may well result in denial of the motion, the Court will not deny this motion on this basis, as it does not appear that the parties would be able to work out their differences with respect to the dispute at issue.").

After considering all the evidence in the record, the Court concludes that Yang's communications with RHI were not a good faith attempt to meet and confer. The emails offered by Yang as evidence of a meet-and-confer at best put the defendants on notice that a request for a meet-and-confer would be forthcoming. They are not a good faith effort at resolving the issues prior to a motion. (*See* ECF No. 80-1, Ex. 1 ("This letter serves to *initiate* the meet and confer process. . . .") (emphasis added).) Further, had there been appropriate follow-up, the meet-and-confer process may well have been productive. The parties have a history of success in this area: following other meet-and-confer processes,

4

Yang reached consensus with the defendants and agreed to dismiss some of her claims. (*E.g.*, ECF Nos. 49, 63 (stipulating to dismissal of several claims after a meet-and-confer).) And, when Yang suggested that she may file a motion to amend, the defendants offered to stipulate to an amended complaint. (ECF No. 80-1, Ex. 2 (offering to stipulate to an amended complaint and asking Yang to wait to file any motion).) As such, the Court denies the motion to amend as to claims brought against RHI.

## B. *Undue Delay and Prejudice*

Even if the Court were to find the meet-and-confer sufficient, it would nevertheless deny the motion as to RHI for the same reasons it denies the motion as to the individual defendants: undue delay, undue prejudice, and failure to cure pleading deficiencies. Yang provides no explanation for the delay in filing the proposed fourth amended complaint. Undue delay "by itself is not enough to deny the requisite relief." *Chestnut v. St. Louis Cty.*, 656 F.2d 343, 349 (8th Cir. 1981) (citation omitted). "Delay is undue when it places an unwarranted burden on the Court or when the plaintiff has had previous opportunities to amend." *Grage v. N. States Power Co.*, 12-CV-2590 (JRT/JSM), 2014 WL 12610147, at *5 (D. Minn. Jan. 3, 2014) (citation and quotation marks omitted). Generally, delay alone is insufficient unless it results in prejudice. *Chestnut*, 659 F.2d at 349. A plaintiff's "unjustifiable lack of diligence and significant delay" in bringing a motion can create prejudice. *Soo Line R. Co. v. Werner Enterprises*, No. 12-CV-1089 (DSD/JSM), 2013 WL 3771391, at *2 (D. Minn. July 17, 2013) (affirming magistrate judge's

denial of motion to amend where plaintiff provided no explanation for delay in bringing motion to amend).

Yang has previously amended her complaint several times, each time changing some of the claims asserted or the parties against whom they are asserted. The proposed fourth amended complaint is no different. In it, she seeks to add new claims or legal theories against various defendants and to add defendants to previously asserted claims. She provides no explanation for her failure to assert these claims earlier. The Court previously granted Yang leave to amend her complaint, and the Court has heard no reason for her failure to make the current proposed changes in response to earlier grants for amendment.

### C. *Repeated Failures to Cure Pleading Deficiencies*

A district court need not allow multiple amendments where the plaintiff proffers "no adequate reason explaining its failure to cure the known defect earlier." *Moses.com Sec., Inc. v. Comprehensive Software, Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (citation and quotation marks omitted) (affirming district court's rejection of third amended complaint for failure to cure). Here, as the defendants point out, Yang was previously ordered to amend paragraph 11 of her complaint to identify the defendants against whom each claim is raised. (ECF No. 31.) Paragraph 11 reads, in relevant part:

> All of the acts and failures to act alleged herein were duly performed by and attributable to all Defendants . . . . Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants such

6

>   allegations and references shall be deemed to mean acts and failures to act
>   of each Defendant acting individually, jointly, and/or severally and/or on
>   behalf of [RHI].

(*See* ECF No. 4 ¶ 11 (Amended Complaint), TAC ¶ 11, PFAC ¶ 11.) The Court found this paragraph did not adequately put the defendants on notice of the particular claims brought against each defendant and required Yang to clarify. (ECF No. 31.) As of the filing of the proposed fourth amended complaint, this paragraph has not been amended. Yang provides no explanation for her failure to amend this paragraph to comply with the pleading standards of the Federal Rules of Civil Procedure. As such, the Court finds that Yang has repeatedly failed to cure pleading deficiencies.

### D. Futility

Amendment is not proper when the proposed amendments are futile, that is, when they would not survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). "[I]n deciding whether to permit a proffered amendment, a court should not consider the likelihood of success unless the claim is 'clearly frivolous.'" *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 944 (8th Cir. 2000) (citation omitted). The proposed fourth amended complaint seeks to reassert several claims that Yang stipulated to dismiss without prejudice, and to assert claims that are subject to the instant motion to dismiss. For the reasons discussed below in connection with the motions to dismiss, many of those claims are futile.

*E. Summary*

The Court denies the motion to amend on the grounds of a failure to meet and confer in good faith, undue delay and prejudice, repeated failures to cure pleading deficiencies, and futility. Even if any one of these reasons were insufficient to deny the motion, taking record as a whole, granting the motion would not be in the interest of justice.

Further, the Court is disturbed by the tactics of Yang and her counsel in litigating this case. Rule 1 of the Federal Rules of Civil Procedure admonishes the parties "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Thus far, this suit has been none of those things. Despite the fact that this case has yet to progress past the pleading stage, the docket has over eighty entries and Yang has not requested a scheduling order. Yang failed to meet her obligation to meet in good faith with the defendants and instead brought a motion to amend that only served to waste the time and resources of the Court and the defendants. At the hearing, Yang's counsel admitted to voluntarily dismissing several claims because they were without legal basis. Yang has provided no justification for any of these actions. Going forward, the plaintiff should be mindful of her obligations under the federal rules, especially Rule 1.

**II.    Motions to Dismiss**

The individual defendants move to dismiss several claims brought against them under Rule 12(b)(6). A court may dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). "The complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Hodnett moves to dismiss counts 1, 7, 8, 14, and 15, arguing that they fail to state a claim against her. Yang stipulated to dismissal of counts 7, 8, and 14 against defendant Miller without prejudice. Miller further moves to dismiss 1, 13, and 15. Because of the significant overlap in arguments by all parties, the Court addresses the motions to dismiss together.

### A. Count 1 – Violation of 42 U.S.C. § 1981

The individual defendants move to dismiss count 1 against them, which alleges violations of 42 U.S.C. § 1981. Section 1981 "prohibits racial discrimination in all phases and incidents of a contractual relationship, [but] the statute does not provide a general cause of action for race discrimination." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009) (citations and quotation marks omitted). To assert a claim under § 1981, a

9

complaint must allege (1) the plaintiff was a member of a protected class, (2) discriminatory intent by the defendant, (3) the plaintiff engaged in a protected activity, and (4) the defendant interfered with that activity. *Id.* Here, the individual defendants argue the count should be dismissed as asserted against them because § 1981 does not provide a cause of action against mere co-workers. The Court agrees.

Although the Eighth Circuit has not spoken on the issue, the Tenth Circuit has found that "relief is available under § 1981 where a party discriminatorily uses its authority to preclude an individual from securing a contract with a third party." *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1197 (10th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Nov. 26, 2002). "[T]his requires the individual to show that the party both possessed sufficient authority to significantly interfere with the individual's ability to obtain contracts with third parties, and that the party actually exercised that authority to the individual's detriment." *Id.*; *see also Daud v. Gold'n Plump Poultry, Inc.*, 2007 WL 1621386, at *8 (D. Minn., May 11, 2007), *adopted*, 2007 WL 1674021 (D. Minn., June 5, 2007) (relying on *Harris* to dismiss § 1981 claims where the plaintiff did not allege that the defendant had the ability to interfere with the contract). Here, Yang does not allege that Hodnett or Miller had the authority to interfere with Yang's employment agreement with RHI.

The cases Yang cites do not compel a different result. Instead, they establish that individuals may be liable under § 1981 only when they have supervisory authority over

10

the plaintiff. For example, Yang cites to *Habben v. City of Fort Dodge*, 472 F. Supp. 2d 1142 (N.D. Iowa 2007), arguing that it "ruled employees can be held personally labile on race discrimination claims pursuant to § 1981." (ECF No. 65 at 7 (citing *Habben*, 472 F. Supp. 2d at 1155–56.) In *Habben*, the court acknowledged that "other courts have held that *supervisory* employees can be held individually liable on at least some kinds of race discrimination claims pursuant to § 1981." 472 F. Supp. 2d at 1155–56 (emphasis added) (collecting cases). Because Yang has not alleged that Hodnett or Miller had supervisory authority over her, her § 1981 claim against both individual defendants is dismissed.

### B. Counts 7 and 8

Hodnett argues that count 7, which alleges a violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), should be dismissed for the same reason as count 1.[3] Hodnett makes the same argument as to count 8, which alleges a violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01, *et seq.* ("MHRA"), for hostile work environment. At the hearing, Yang agreed that there was no basis to assert a Title VII claim or an MHRA claim against the individual defendants and maintained she had already stipulated to dismissal

---

[3] There is some confusion about what claim Yang intended to assert in count 7. The heading of the count lists the cause of action as arising under § 1981 but the substantive law referenced in the count is Title VII. There is no dispute that Title VII does not give rise to liability for mere co-workers. To the extent that Yang intended to bring a claim under § 1981 for a hostile work environment against the individual defendants, that claim would properly be subject to dismissal under Rule 12(b)(6) for the same reasons as discussed for count 1. As such, Yang's attempt to replead the § 1981 claim against the individual defendants in her proposed fourth amended complaint would be futile.

of these claims against Miller. Yang informed the Court she would file a similar stipulation of dismissal of these counts against Hodnett. As of the date of this Order, no such stipulation has been filed. However, Yang's response to the motion to dismiss similarly indicates (and at the hearing made clear) that counts 7 and 8 were properly subject to dismissal against the individual defendants. The Court therefore dismisses counts 7 and 8 as to Hodnett.

### C. Count 13—Defamation

Miller moved to dismiss count 13 alleging defamation against her. The defamation claim is made up of two separate incidents: First, Yang alleges that Miller used the term "yourslutsky" to refer to employees with "Ukrainian names," and that the use of this term defamed Yang.[4] (TAC ¶ 21.) Second, Yang alleges that Miller accused Yang of tripping her, and "announced to the entire floor of approximately 40-60 document reviewers that [Yang] tripped her." (TAC ¶ 41.)[5] (*See id*. ¶ 41.) Yang claims these statements are defamatory slander *per se*. Under Minnesota law, a statement is defamatory if: (1) it is communicated to someone other than the plaintiff; (2) it is false; and (3) tends to harm the plaintiff's reputation and lower her in the estimation of the community. *Richie v. Paramount Pictures Corp.*, 544 NW.2d 21, 25 (Minn. 1996).

---

[4] Yang was born in Laos and is a person of Hmong ancestry. (TAC ¶ 14.)
[5] The complaint does not identify which statements are the subject of Yang's defamation claim. Yang's brief argues these two statements constitute defamation. (ECF No. 65 at 13–14.)

12

Defamation *per se* includes falsely accusing the plaintiff of committing a crime and imputing serious sexual misconduct to the subject of the statement. *Id.* at 25 n.3.[6]

The Court agrees with Miller that neither statement is defamation *per se*. The first statement—referring to Ukrainian employees as having names like "yourslutsky"—is not defamatory *per se* as to Yang because it does nothing to accuse her of a crime or serious sexual misconduct. Yang argues the comment was directed at her and "there could have been no other purpose of making the 'yourslutsky' remark other than to disparage and defame" her. (ECF No. 65 at 13). Even if it is true that the purpose of the statement was to disparage Yang, it does not impute any serious sexual misconduct to Yang, thus the statement does not constitute defamation *per se*.

The statement that Yang tripped Miller similarly fails. Yang's counsel clarified at the hearing that Yang's position is that the statement was defamatory *per se* because it falsely accused Yang of a crime—because tripping Miller would be an assault. "With regard to false accusations of a crime, the words need not carry upon their face a direct imputation of a crime. It is sufficient if the words spoken, in their ordinary acceptance, would naturally and presumably be understood . . . to impute a charge of crime." *Longbehn v. Schoenrock*, 727 N.W.2d 153, 158–59 (Minn. Ct. App. 2007) (quotation marks omitted) (quoting *Larson v. R.B. Wrigley Co.*, 235 N.W. 393, 394 (Minn. 1931)). A false

---

[6] The parties disagree on what constitutes defamation *per se* under Minnesota law, but Minnesota courts have cited both the commission of a crime and imputation of serious sexual misconduct as two instances where a claim could be made for defamation *per se*.

13

statement of tripping someone would not naturally and presumably be understood to be criminal assault. No reasonable person would believe that the statement as imputing criminal misconduct to Yang. *See id.* at 159 (stating that the test is whether a reasonable person under similar circumstances would understand the statement as making an accusation of criminal misconduct). As such, the allegedly false statement is not defamation *per se*.

Finally, to the extent that the complaint alleges ordinary defamation, the complaint also fails to state a claim. Minnesota has recognized that for claims of defamation *per se* harm to reputation may be presumed. *Richie v. Paramount Pictures Corp*, 544 N.W.2d 21, 25 & n.3. But it has not extended that presumption of harm to other types of defamation. *See id.* (refusing to apply a presumption of harm where plaintiffs alleged defamation by a media defendant in the absence of allegations of actual malice). Thus, Yang is not excused from alleging actual harm in her complaint, and it is undisputed that she has not done so.

Because neither statement is defamation *per se* and because Yang fails to allege any harm from the statements, count 13 fails to state such a claim against Miller. As such, it is dismissed as to Miller.

### D. Count 14—Tortious Interference with Contract

Hodnett argues that count 14, which asserts a tortious interference with contract claim against the individual defendants, should be dismissed because Minnesota does

14

not recognize this cause of action against a co-employee who lacks supervisory authority over the plaintiff. Yang previously stipulated to dismissal of this claim against Miller, but no such stipulation exists with Hodnett. Yang assured the Court at the hearing that she would file a stipulation dismissing this claim against Hodnett. As of the date of this Order, she has not done so. Regardless, this claim is properly subject to dismissal under Rule 12(b)(6).

To allege tortious interference with a contract under Minnesota law, a plaintiff must show "(1) the existence of a contract, (2) the defendant's knowledge of the contract, (3) the defendant's intentional procurement of the breach of contract, (4) the defendant acted without justification, and (5) damages." *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, 351 F. Supp. 3d 1187, 1214 (D. Minn. 2018) (citing *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994)).

But "Minnesota has not recognized a tortious interference cause of action against a co-employee." *Jones v. Keith*, No. 00-CV-2741 (ADM/SRN), 2002 WL 273141, at *5 (D. Minn. Feb. 25, 2002). This is especially true for employees without any supervisory role over the plaintiff or the ability to cause the plaintiff's discharge. *Id.*; *see also Nordling v. N. States Power. Co.*, 478 N.W.2d 498, 507 (Minn. 1991) (affirming dismissal of tortious interference claim against a co-employee where the conduct did not cause the plaintiff's

15

dismissal). Because the complaint does not allege that Hodnett had a supervisory role or the ability to cause Yang's dismissal, count 14 is dismissed.[7]

### E. Count 15—negligent/intentional infliction of emotional distress

The individual defendants move to dismiss count 15, which alleges "negligent/intentional infliction of emotional distress." Negligent infliction of emotional distress and intentional infliction of emotional distress are two separate claims. The complaint fails to state a claim under either theory.[8] A plaintiff claiming negligent infliction of emotional distress must claim that she: (1) was within a zone of danger of physical impact; (2) reasonably feared for her own safety; and (3) "suffered severe emotional distress with attendant physical manifestations." *Thomsen v. Ross*, 368 F. Supp. 2d 961, 977 (D. Minn. 2005) (citing *K.A.C. v. Benson*, 527 N.W.2d 553, 557 (Minn. 1995)).

The individual defendants argue that the complaint does not allege that Yang was in a zone of danger. Yang responds that the Minnesota Court of Appeals has adopted an exception to the zone of danger rule, allowing a plaintiff "to recover damages for mental

---

[7] In the proposed fourth amended complaint, Yang seeks to substitute this claim with a claim for tortious interference with a proposed economic advantage. The elements of these claims differ, but because the Court would dismiss this claim in the PFAC due to the Plaintiff's unwarranted delay in amending her complaint, it need not determine whether the claim would also be futile.

[8] Yang makes no attempt to clarify under which claim she is proceeding and asserts the same claim in her proposed fourth amended complaint, albeit with additional factual allegations. This claim is futile for the same reasons the claim in the third amended complaint is subject to dismissal.

16

anguish or suffering upon a direct invasion of his or her rights, such as defamation, malicious prosecution, or other willful, wanton or malicious conduct." (ECF No. 64 at 15 (citing *Bohdan v. Alltool Mfg., Co.*, 411 N.W.2d 902, 907 (Minn. Ct. App. 1987).)

But the Minnesota Supreme Court has not recognized this exception, and other courts in this district have declined to recognize this exception because of its apparent conflict with Minnesota Supreme Court case law. *See, e.g., Armstrong v. Target Corp.*, No. 10-CV-1340 (RHK/SRN), 2010 WL 4721062, at *5 (D. Minn. Nov. 15, 2010) (citing *Meyer v. Tenvoorde Motor Co.*, 714 F. Supp. 991, 994–95 (D. Minn. 1989)). In *Meyer*, the Court found that *Bohdan* was directly at odds with the Minnesota Supreme Court's refusal to relax the "zone of danger" requirement. *Meyer*, 714 F. Supp. at 994–95 (citing *Stadler v. Cross*, 295 N.W.2d 552 (Minn. 1980)). It also concluded that "*Bodhan* based its finding of an exception on two cases, neither of which address negligent infliction of intentional distress." *Id.* at 995. As such, the court in *Meyer* found "the *Bohdan* exception undermines clear precedent limiting negligent infliction of emotional distress to those within the zone of danger, and the exception is without foundation in the cited cases." *Id.* at 996.

The Court joins other courts in this district and will not recognize an exception to the zone of danger requirement. Because the complaint does not allege any zone of danger, the negligent infliction of emotional distress claim is dismissed for failure to state a claim.

A plaintiff claiming intentional infliction of emotional distress must allege: (1) "defendants' conduct was extreme and outrageous;" (2) "defendants' conduct was intentional and reckless;" (3) "defendants' conduct caused the plaintiff emotional distress;" and (4) "the distress was severe." *Thomsen*, 369 F. Supp. 2d at 977 (citing *K.A.C*, 527 N.W.2d at 560). "Recovery is limited to situations involving particularly egregious facts, where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Id.* (cleaned up) (quoting *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983)).

The individual defendants argue that this claim should be dismissed because the complaint alleges neither extreme and outrageous conduct nor severe emotional distress. Yang summarily responds that her complaint is adequate. It is not. Severe and outrageous conduct "must be so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Hubbard*, 330 N.W. 2d at 439 (citation and quotation marks omitted). Assuming Yang's complaint meets this high threshold, the complaint is devoid of any allegation of severe emotional distress. Minnesota has adopted the restatement definition of severe emotional distress where "the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* (citing Restatement (Second) of Torts § 46 cmt. j (Am. Law Inst. 1965)).

Yang argues that the Minnesota Supreme Court in *Hubbard* recognized an exception to the requirement for severe emotional distress when the claim arises out of

18

another tort. (ECF No. 64 at 15–16). The language Yang quotes in her brief is the Minnesota Supreme Court's discussion of the case law prior to the court recognizing the independent tort of intentional infliction of emotional distress. As such, it is dicta. *See State ex rel Woyke v. Tonka Corp.*, 420 N.W.2d 624, 628 (Minn. Ct. App. 1988) (explaining that *Hubbard* changed the law around intentional infliction of emotional distress). *Hubbard* adopted the restatement definition of the tort, without an exception. Further, the Court has not found any court endorsing Yang's argument that she need not claim any emotional distress when the complaint alleges a claim for intentional infliction of emotional distress. *Cf. Strauss v. Thorne*, 490 N.W.2d 908, 913 (Minn. Ct. App. 1992) (affirming summary judgment for intentional infliction of emotional distress despite reviving defamation claim because plaintiff failed to show severe emotional distress). Yang is not relieved of her obligation to plead severe emotional distress. Because Yang's complaint fails to do so, the intentional infliction of emotional distress claim is dismissed.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Theresa Hodnett's motion to dismiss (ECF No. 51) is GRANTED;
    a. Counts 1, 7, 8, 14, and 15 are DISMISSED as to Hodnett;
2. Defendant Marcia A. Miller's motion to dismiss (ECF No. 58) is GRANTED;
    a. Counts 1, 13, and 15 are DISMISSED as to Miller; and

19

    3. Plaintiff's motion for leave to amend (ECF No. 72) is DENIED.


Dated: September 8, 2020                                      BY THE COURT:

                                                                            s/Nancy E. Brasel
                                                                            Nancy E. Brasel
                                                                            United States District Judge