# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MAY YANG, | Case No. 19-CV-2669 (NEB/DTS) |
| Plaintiff, | |
| v. | ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS, MOTION TO SUPPLEMENT THE RECORD, MOTION FOR RECONSIDERATION, OBJECTIONS TO MAGISTRATE JUDGE DECISIONS, AND MOTION TO ALTER/AMEND/SUPPLEMENT PLEADINGS |
| ROBERT HALF INTERNATIONAL, INC., a/k/a ROBERT HALF CORPORATION, a/k/a ROBERT HALF LEGAL; THERESA HODNETT; MARCIA A. MILLER, | |
| Defendants. | |

After several incidents with her co-workers, May Yang sued her employer, Robert Half International, Inc., ("RHI"), and her co-workers, Marcia Miller and Theresa Hodnett, for race discrimination and various state-law torts. Hodnett moved for judgment on the pleadings. (ECF No. 96.) After the parties completed briefing, but before the hearing on the motion, Yang moved to supplement the record. (ECF No. 125.) After the hearing, Yang filed a letter with the Court, seeking permission to file a motion to reconsider the one of the Court's prior orders. (ECF No. 139.) Yang also filed two objections to orders United States Magistrate Judge David T. Schultz issued denying her request to amend the scheduling order, as well as a motion to amend the Complaint to add punitive damages. (ECF Nos. 155, 163, 169.) For the following reasons, the Court grants Hodnett's

motion for judgment on the pleadings, denies Yang's motion to supplement the record, dismisses Yang's claims against Hodnett, denies Yang's request for reconsideration, overrules her objections, and denies her motion to amend her Complaint.

## BACKGROUND

After three iterations of the Complaint and multiple motions, Yang asserts that her allegations give rise to a Minnesota Human Rights Act ("MHRA") aiding and abetting claim and a defamation claim. They do not, and the Court must dismiss the claims.

### I.   Factual Background

Miller and Hodnett (who are friends) were Yang's co-workers. The three of them did not get along, to say the least. Yang, Hodnett, and Miller—all attorneys—worked for RHI, a global staffing firm, in Minneapolis. (ECF No. 32 ("TAC") ¶¶ 5–10, 14–15, 17–19.) Between August 2017 and May 2019, Yang, a person of Hmong ancestry from Laos, was the only person of Asian descent working full time at RHI's Minneapolis office; her evaluators consistently gave her good performance reviews. (*Id.* ¶¶ 14–16.)

### A.   *Conflicts between Miller and Yang*

Shortly after Miller began working at RHI, Miller began speaking with Yang about politics, despite RHI's warnings not to discuss such issues in the workplace. (*Id.* ¶ 20.) Sometime later, Miller made a comment in the presence of co-workers: "[l]ook at all these Ukrainian names like 'yourslutsky'"; Yang alleges that this was a statement intended to defame, harass, and humiliate her. (*Id.* ¶ 21.) Despite an email from Chelsea Ritter, RHI's

Project Fulfillment Manager, cautioning RHI employees about such discussions, RHI never investigated Miller's conduct. (*Id.* ¶¶ 22–23.)

After Miller began making threats about getting Yang fired, Yang contacted Ritter, asking about Yang's employment status at RHI; Ritter replied that she had heard nothing negative about Yang's performance and asked if there was anything she could do, but did not investigate Miller's threats. (*Id.*¶¶ 24–25.) Escalating her comments, Miller began referring to Yang as her "Batch" (i.e., her "Bitch"), saying, for example, that her "Batch . . . is still here." (*Id.* ¶ 26.) Miller also "maligned [Yang's] name and reputation" to RHI employees, "making reference to [Yang] as a promiscuous person" because of her race and ethnicity. (*Id.* ¶ 27.) Yang complained twice more to Ritter and Ritter again declined to investigate both times, although she said that she was "aware of how Marcia Miller behaves," and Ritter told Yang that her job was "not in question, at all." (*Id.*¶¶ 28–31.) Yang also reported Miller's actions to Issac Miner, RHI's Project Floor Manager, who did nothing to investigate. (*Id.* ¶ 32.)

B.    *Hodnett Joins Miller*

In December 2018, Yang reported to Miner that Hodnett was also making derogatory remarks towards her. (*Id.* ¶ 33.) Hodnett was allegedly calling Yang a "ho" or whore. (*Id.*) Yang inferred this name-calling from remarks made by Hodnett consisting

of indirect statements like "leave an hour";[1] deliberate mispronunciations and plays on words such as "we lost a 'ho' person," "I'm *ho*-pee";[2] as well as mentioning names of states that had the letters "ho" together, such as "Ida*ho*" and "Okla*ho*ma." (*Id.*) Hodnett and Miller "only made statements of this nature about Yang and targeted Yang because of her race and ethnicity with the purpose of driving her out of the workplace." (*Id.* (cleaned up).) Hodnett continued making these remarks from September 2018 until Yang left RHI; Hodnett and Miller were also involved in ginning up other workplace conflict for Yang. (*Id.* ¶¶ 34–38.)

**C.**   ***The Tripping Incident***

On May 2, 2019, Miller tripped Yang while they crossed paths in a doorway at the RHI office; workplace video footage shows Miller sticking her foot out to catch Yang as they go through the door. (*Id.* ¶ 40.) Miller then falsely reported to Ritter that Yang had tripped her, instead of the other way around. (*Id.* ¶ 41.) After a review of the video, Ritter concluded that Yang did not trip Miller. (*Id.* ¶ 43.) Amber Schreier, RHI's Managing Director, spoke to Yang about the tripping incident and asked what Yang wanted RHI to do about the situation; Yang responded that RHI should officially state that she did not

---

[1] According to Yang, the letters "U" and "R" from "Hour" were combined into "UR"— short for "you're"—and then combined with the remaining "H" and "O" for "Ho" to mean that Yang, a "ho," should "leave." (ECF No. 107 at 8–9.)

[2] Presumably, Hodnett intended "ho-pee" to be a derogatory remark concealed as a reference to the Hopi Native American tribe. (TAC ¶ 33.)

trip Miller and, if RHI determined that Miller tripped her, should fire Miller. (*Id.* ¶ 44.) Schreier reviewed the video and agreed that Miller tripped Yang, but did not further investigate or take action against Miller. (*Id.* ¶¶ 44–45.)

Two days after Schreier reviewed the video, she suspended Yang based on a complaint Hodnett made the day after Miller tripped Yang. (*Id.* ¶ 47.) Yang asserted that Hodnett made the complaint to shield Miller from the consequences of the tripping incident, and to retaliate against Yang for reporting the incident. (*Id.* ¶ 48.) Following this suspension, Yang began to be selected for fewer projects at RHI. She left the company in September 2019. (*Id.* ¶¶ 49–99.)

## II.    Procedural Background

The parties have already litigated Yang's claims extensively in the year and a half since she filed suit. Yang filed her first Complaint on October 7, 2019. (ECF No. 1.) She filed an Amended Complaint the next day. (ECF No. 4.) After resolution of RHI's Motion for More Definite Statement, Yang filed another Amended Complaint, her third, which is now the operative pleading. (ECF Nos. 7, 31, 32.)

In February 2020, Hodnett moved to dismiss the majority of Yang's claims against her. (ECF No. 37.) Two weeks later, Miller moved to dismiss several of Yang's claims against her. (ECF No. 58.) Before the hearing on those motions, Yang sought to file yet another complaint, which would have been her fourth. (ECF No. 72.) The Court denied

Yang's motion and granted Hodnett's and Miller's motions in September 2020. (ECF No. 86.)

Hodnett then moved for judgment on the pleadings to dismiss Yang's remaining claims: Count IV, which claims that Hodnett aided and abetted race discrimination in violation of the MHRA; and Count XIII, which alleges that Hodnett defamed Yang. (ECF No. 96.) Before the hearing on Hodnett's motion, Yang asked to supplement the record. (ECF No. 125.) And after the hearing, Yang requested that the Court reconsider its prior ruling dismissing Yang's claims against Miller and Hodnett. (ECF No. 139.)

In February 2021, Judge Schultz issued two text-only orders, denying Yang's request to amend the scheduling order to permit her to amend her Complaint and denying her request to vacate the first text-only order. (ECF Nos. 152, 154.) Yang objected to both of those orders. (ECF Nos. 155, 163.) Finally, in March 2021, Yang sought permission to amend the Complaint to add punitive damages to her claims. (ECF No. 169.) Defendants oppose that request. (ECF Nos. 198–206.)

## ANALYSIS

Because the material she presents could, possibly, affect the Court's ruling on Hodnett's motion,[3] the Court addresses Yang's motion to supplement the record before considering Hodnett's motion.

---

[3] Although they do not. *See infra*, Section II.C.

6

I.      **Motion to Supplement the Record**

In considering a motion for judgment on the pleadings, the Court is limited to just

that: the pleadings. *See von Kaenel v. Armstrong Teasdale, LLP*, 943 F.3d 1139, 1143 (8th

Cir. 2019) ("[A] court generally may not consider matters outside the pleadings on a

motion for judgment on the pleadings."). There are some exceptions to this rule, however:

material that the complaint incorporates by reference or that is integral to the claim,

material of which the Court may take judicial notice, matters of public record, items in

the record of the case, and exhibits attached to the complaint and whose authenticity is

unquestioned. *Id.*

Yang's motion to supplement the record asks the Court to consider matters outside

the pleadings. (*See generally* ECF No. 126.) For the Court to consider the material she

presents, it must fall under one of the exceptions. It does not.

First, Yang attached none of this material to the TAC, nor is it material in the record

(she seeks to add it to the record). Second, the Court cannot take judicial notice of the

material because it is subject to reasonable dispute. *Kushner v. Beverly Enters., Inc.*, 317

F.3d 820, 830 (8th Cir. 2003) (citing Fed. R. Evid. 201(b) ("A judicially noticed fact must be

one not subject to reasonable dispute . . . .")).

The question comes down to whether the material is integral to, or incorporated

in, the TAC. It is not. Yang alleges that the material she seeks to present falls into three

groups: (1) material concerning whether Hodnett did, in fact, make false reports to get

7

Yang fired; (2) evidence showing that Hodnett and Miller were friends; and (3) evidence supporting Yang's defamation claim in relation to Hodnett's statement that she is "Ho-Pee." (ECF No. 126 at 6–10.)

At the outset, the Court notes that evidence is unnecessary at the motion for judgment on the pleadings stage because it must accept all of Yang's well-pleaded factual allegations as true. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009). So the Court must accept Yang's allegations that Hodnett made false reports to get Yang fired, that Hodnett and Miller were friends, and that Hodnett made the "I'm Ho-Pee" comment while not actually being of Hopi descent. Yang's proposed material is accordingly not integral to the TAC. Nor is it incorporated by reference. Yang received this material as part of Defendants' initial disclosures, after she filed the TAC and discovery began. She thus could not have referenced this material in the TAC. (ECF No. 126 at 2–4.)

## II.   Motion for Judgment on the Pleadings

Hodnett seeks to dismiss the remaining two counts Yang brought against her: Count IV (aiding and abetting race discrimination in violation of the MHRA) and Count XIII (defamation). The Court analyzes a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedures under the same standards as it considers a Rule 12(b)(6) motion to dismiss for failure to state a claim. *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018). To survive a motion to dismiss under Rule 12(c), the Complaint "must contain 'enough facts to state a claim to relief that is

plausible on its face.'" *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage in the litigation, the Court must accept as true all factual allegations in the Complaint and draw all reasonable inferences in the plaintiff's favor. *Braden*, 588 F.3d at 591. Factual allegations in the Complaint must be sufficient to "raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citation omitted). "'[T]hreadbare recitations of the elements of a cause of action supported by mere conclusory statements' are not entitled to a presumption of truth" when considering a Rule 12(c) motion. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (*en banc*) (per curiam) (quoting *Iqbal*, 556 U.S. at 678). The Court's determination of whether Yang has met this standard is "context-specific" and requires it to "draw on its judicial experience and common sense." *Id.* (quotation omitted).

**A.    *Aiding and Abetting Race Discrimination in Violation of the MHRA***

The MHRA protects Minnesota citizens from discrimination in employment. Minn. Stat. § 363A.02 subd. 1(1). The MHRA bars the termination of or discrimination against employees based on, among others, race or national origin. *Id.* § 363A.08, subd. 2. To plead a claim of aiding and abetting an MHRA violation, the plaintiff must adequately allege that: (1) a third party violated the MHRA; (2) the defendant knew that the third

party's conduct violated the MHRA; and (3) the defendant gave "substantial assistance or encouragement" to that third party to violate the MHRA. *Matthews v. Eichorn Motors, Inc.*, 800 N.W.2d 823, 830 (Minn. Ct. App. 2011) (Wright, J.) (quotation omitted).

Although not clear from the TAC, Yang's briefing shows that she asserts that both Miller and RHI discriminated against her on the basis of race and/or national origin and that Hodnett aided and abetted that discrimination. (ECF No. 107 at 7–16.) To survive Hodnett's motion for judgment on the pleadings, Yang's allegations must make it plausible that either Hodnett or RHI violated the MHRA by discriminating against Yang based on her race or national origin, that Hodnett knew that Miller's or RHI's conduct violated the MHRA, and that Hodnett gave Miller or RHI "substantial assistance or encouragement." *Matthews*, 800 N.W.2d at 830.

Yang's claims fail because she has not plausibly pleaded that either Miller or RHI acted against her because of either her race or national origin. Yang's allegations that Miller and RHI acted against her based on her race or national origin are exactly the sort of "threadbare recitations of the elements of a cause of action supported by mere conclusory statements [that] are not entitled to a presumption of truth." *Zink*, 783 F.3d at 1098 (quotation omitted); (*see* ECF No. 32 ¶¶ 27 ("Miller only made statements of that nature about [Yang] and targeted [Yang] because of her race and ethnicity."), 33–34 (similar).) Although Yang has properly pleaded that she was the only Hmong and Laotian employee in RHI's office, this is not enough to make it plausible that racial or

ethnic animus motivated RHI's and Miller's actions. *Zhan v. County of Cook*, No. 03 C 9043, 2007 WL 1031175, at *5 (N.D. Ill. Mar. 28, 2007) ("No inference of national origin discrimination can be drawn from Zhan's status as the only employee of Chinese origin . . . .")

Yang's theory seems to be that because she was the only Hmong and Laotian employee in RHI's office, and the only one who Miller and Hodnett tripped and called a "ho," it is therefore plausible that such harassment was racially or ethnically motivated. But there are many reasons that Miller and RHI may have acted the way Yang alleges that they did, not least of which would be that they (or other RHI employees) simply did not get along with Yang. Although uncivil—and extremely unprofessional—such action does not automatically become plausibly rooted in racial or ethnic bias simply because the target is of a different race or national origin. *See id.* It is *possible* that racial or ethnic bias motivated RHI and Miller, but plausibility demands more than a "sheer possibility" of unlawful action. *Iqbal*, 556 U.S. at 678.

Because Yang cannot connect Hodnett's actions to plausible race or national origin discrimination violations of the MHRA, the Court grants Hodnett's motion for judgment on the pleadings for Count IV.[4]

---

[4] The second element of an MHRA aiding and abetting claim is that the defendant knew that the conduct she allegedly aided or abetted constituted a violation of the MHRA. *Matthews*, 800 N.W.2d at 830. Yang has likewise failed to plead any facts from which the Court could find it plausible that Hodnett knew that she was aiding and abetting racial discrimination.

B.     *Defamation*

Under Minnesota law, to state a claim of defamation, the plaintiff must plead four things: (1) a false statement; (2) made to others; (3) that harms the plaintiff's reputation or lowers her community standing; and (4) the recipient of the statement understands it to refer to the plaintiff. *Larson v. Gannett Co.*, 940 N.W.2d 120, 130 (Minn. 2020). Statements that are only opinion and general insults, however, are not defamatory. *See Bebo v. Delander*, 632 N.W.2d 732, 739–40 (Minn. Ct. App. 2001) ("Statements which cannot be reasonably interpreted as stating actual facts, are absolutely protected by the First Amendment. Expressions of opinion, rhetoric, and figurative language are generally not actionable if, in context, the audience would understand the statement is not a representation of fact. For this reason, even vulgar language or name-calling is not necessarily defamation.") (citations omitted; cleaned up); *Lee v. Metro. Airport Comm'n*, 428 N.W.2d 815, 821 (Minn. Ct. App. 1988) ("As a matter of law, statements that appellant is a 'fluffy', a 'bitch,' or flirtatious are too imprecise in nature to be actionable defamatory statements."); *see also Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1303 (8th Cir. 1986) ("[N]o opinion is actionable.") (emphasis original).

In considering whether the statement is one of actionable, defamatory fact or non-actionable, non-defamatory opinion, the Minnesota Court of Appeals applies a four-factor test: (1) the statement's precision and specificity; (2) its verifiability; (3) its social

and literary context; and (4) "the public context" in which the defendant made the statement. *Bebo*, 632 N.W.2d at 740.

Here, the Court has no trouble concluding that Hodnett's statements were statements of opinion and not defamatory. First, the statements are extremely imprecise and unspecific—it would be one thing if Hodnett had explicitly called Yang a "whore,"[5] but that is not what Yang has alleged. Instead, Yang has alleged a series of oblique, indirect, and vague remarks, coded language, and mispronounced words that allegedly amount to Hodnett calling her a "whore." (TAC ¶¶ 33–35.) Second, given that the statements are so imprecise, they are difficult to verify as true or false. *Lund v. Chicago & Nw. Transp. Co.*, 467 N.W.2d 366, 369 (Minn. Ct. App. 1991) ("Although uncomplimentary, 'shit heads' does not suggest verifiably false facts about Lund."). Third, the social context of Hodnett's statements lends weight to the conclusion that the statements are opinion because they are not open and obvious statements that Yang is a "whore." Fourth, the public context also favors that conclusion because Yang has not plausibly alleged that the meaning of Hodnett's statements was public—i.e., that other parties who heard it knew its meaning.

---

[5] The Court notes that sometimes direct allegations of prostitution, followed by factual allegations that the plaintiff had been in a relationship for the purpose of money and material objects can give rise to a defamation claim, but that is not the case before the Court. *Mallory v. S&S Publishers*, 168 F. Supp. 3d 760, 775–76 (E.D. Pa. 2016).

The Minnesota Court of Appeals's decision in *Bebo* supports the Court's conclusion. There, the court concluded that calling someone an "asshole" and other names was "pure vulgarity" and had "no basis in fact." 632 N.W.2d at 740. Here, Hodnett's statements are far less precise than those in *Bebo* and are also "pure vulgarity" with no support. Finally, common sense also supports this conclusion. If one co-worker calls another an "ogre," no one who heard that insult would take it to mean that the one was saying that the other was a fictional monster from the Brothers Grimm—they would understand it to be a general insult rather than an actionable defamatory statement.

### C.    *Futility*

Normally, when a complaint fails to state a claim, the Court should permit leave to amend, unless the amendment would be futile. Fed. R. Civ. P. 15(a); *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). To deny leave to amend on the basis of futility, the Court must conclude that any proposed amendments "could not withstand a motion to dismiss under Rule 12(b)(6)." *Zutz*, 601 F.3d at 850. Here, any amendments that Yang could make would be futile. The Court draws this conclusion after considering the material that Yang included in her motion to supplement the record, (ECF No. 125). Because the Court concludes that Yang has not pleaded any factual allegations making it plausible that RHI or Miller based their actions on Yang's race or national origin, nor does the material she included in her motion remedy this defect, she cannot save her aiding and abetting claim against Hodnett. And because the Court concludes that Hodnett's statements about Yang

14

being a "ho" are simply non-defamatory general insults, she cannot save her defamation

claim either.

Accordingly, amendment would be futile, and the Court dismisses Yang's claims

against Hodnett with prejudice.

### III.    Motion to Reconsider

After the hearing, Yang filed a letter requesting that the Court reconsider its

decision dismissing claims against Hodnett and Miller.[6] (ECF Nos. 86, 139.) The Court

construes the letter as a motion to reconsider its prior Order under Rule 60(b) because

Yang is requesting relief from the Order. Fed. R. Civ. P. 60(b).

Motions for reconsideration are not "vehicle[s] to identify facts or legal arguments

that could have been, but were not, raised at the time the relevant motion was pending."

*SPV-LS, LLC v. Transamerica Life Ins. Co.*, 912 F.3d 1106, 1111 (8th Cir. 2019) (quotation

omitted). Nor may a party use Rule 60(b) for "simple reargument on the merits."

*Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999). The purpose of a motion for

reconsideration is to "correct manifest errors of law or fact or to present newly discovered

evidence." *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010) (quotation

omitted). To succeed on a motion for reconsideration, a party must show "exceptional

circumstances." *Arnold v. Wood*, 238 F.3d 992, 998 (8th Cir. 2001).

---

[6] It is unclear whether Yang's letter is a formal motion to reconsider or a request to file a motion to reconsider. Regardless, Yang failed to comply with the local rules of the District in so filing.

Here, as Yang is requesting reconsideration of the Court's Order on Miller and Hodnett's respective motions to dismiss, she cannot be asking the Court to present new evidence (the Court takes none at such a stage), nor can she ask the Court to correct an error of fact (the Court assumed the truth of her allegations). (ECF Nos. 51, 58, 86, 139.) So Yang is asking the Court to correct a manifest error of law. No such error occurred.

Yang seeks reconsideration of six issues the Court decided unfavorably: (1) dismissal of her defamation and defamation *per se* claims; (2) dismissal of her negligent infliction of emotional distress claims; (3) dismissal of her intentional infliction of emotional distress claims; (4) dismissal of her race discrimination claims under 42 U.S.C. Section 1981; (5) citing her for failing to comply with the District's meet-and-confer requirements; and (6) not permitting her to amend her Complaint because of multiple opportunities to amend. (ECF No. 139.)

Beginning with defamation, Yang claims that the Court failed to analyze her claims under Minnesota substantive law and look at all the circumstances in which Miller made her statements. Her arguments simply reallege the arguments she made before the Court in relation to Miller's motion to dismiss. (*Compare* ECF No. 65 at 12–14, *with* ECF No. 139 at 1.) The same is true for both her intentional and negligent infliction of emotional distress claims, as well as her Section 1981 claims. (*Compare* ECF No. 65 at 5–12, 14–16, *with* ECF No. 139 at 1–2.) As for Yang's argument that she did, in fact, comply with the District's meet-and-confer rules, she provides no support for this contention, nor

does she show how the Court committed a "manifest error[] of law" in so doing. *Arnold*, 627 F.3d at 721.

Finally, Yang asserts that the Court should have granted her leave to amend her Complaint because she, "in essence" has "only filed one substantive amended complaint." (ECF No. 139 at 2.) This argument fails for two reasons. First, many of the amendments she previously sought to add were futile, and would remain so for the reasons discussed above. (ECF No. 86 at 7.) Second, the Court concluded that her offered amendments also failed to cure pleading defects. (*Id.* at 6–7.) Yang has not shown that the Court committed a "manifest error[]" in denying her leave to amend. *Arnold*, 627 F.3d at 721.

## IV.    Objections to Magistrate Judge's Decisions

The scheduling order set February 1, 2021, as the deadline to amend the pleadings.[7] (ECF No. 110 at 1.) On January 29, 2021, Yang sent a letter to Judge Schultz, asking for a discovery status conference where she would seek to modify the scheduling order to extend the time to amend her Complaint. (ECF No. 142.) Judge Schultz held the requested conference but denied Yang's request in a text-only order. (ECF Nos. 151–152.) Yang then contacted Judge Schultz via email and requested that he vacate his order denying her request to amend the scheduling order; Judge Schultz, in a second text-only

---

[7] The exception to this deadline was for punitive damages—the scheduling order set March 15, 2021, as that deadline. (ECF No. 110 at 1.)

order, denied her request. (ECF No. 154, 157-8.) Yang objects to both of these orders. (ECF Nos. 155, 163.) The Court reviews objections to a magistrate judge's orders *de novo*. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(a).

A party may seek leave to amend a scheduling order, but the party must show good cause and the judge hearing the case must consent. Fed. R. Civ. P. 16(b)(4); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). The primary factor in the good cause analysis is the movant's diligence in attempting to meet the scheduling order's requirements. *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012). If the plaintiff fails to show a "change in the law," "newly discovered facts, or any other changed circumstance" after the deadline in the scheduling order, the movant has not shown good cause. *Id.* (quotation omitted).

## A.     February 8, 2021 Text-Only Order

Yang argues that Judge Schultz erred because she had established good cause to modify the scheduling order due to Defendants' delayed response to discovery requests. (ECF No. 155 at 10–12.) This objection fails.[8]

Yang has not shown that she was diligent in following the scheduling order's requirements. Yang argues that the delay in her request to amend is due to the Defendants' alleged failure to timely produce discovery, but she notified Judge Schultz

---

[8] Yang also argues that Judge Schultz's use of a text-only order failed to comply with this District's local rules for resolution of non-dispositive issues by a magistrate judge. In light of her failure to show good cause, the Court does not consider this complaint.

of this issue only a few days before the time the scheduling order set—she could have raised the issue sooner than she did. Yang has not shown that she was diligent and therefore has not shown "good cause" to modify the scheduling order.

### B.    February 19, 2021 Text-Only Order

Yang argues that she had obtained a hearing date for her motion to amend before the deadline the scheduling order set to amend pleadings and therefore was in compliance with the District's Local Rules. (ECF No. 163 at 4–5.) But the date of this purported hearing appears nowhere in the record, in contrast to several such notices for Defendants' hearings.[9] (*E.g.*, ECF Nos. 8, 20, 23.) Yang reasserts her argument that there is good cause to amend the scheduling order to permit her to amend her Complaint, but the Court concludes that, for the reasons stated above, no such good cause exists.[10] (ECF No. 163 at 5–7.)

The Court also reaffirms its prior conclusion that Yang has caused "undue delay and prejudice" and has repeatedly failed "to cure pleading deficiencies." (ECF No. 86 at

---

[9] Yang did file a notice of hearing for her motion to amend her Complaint to add punitive damages (ECF No. 196), but this does not appear to include the request that Judge Schultz denied in his text-only order.

[10] Yang has also failed to produce a copy of any proposed amendments she would make to the Complaint, which violates this District's Local Rules. D. Minn. L.R. 15.1(b). With no proposed complaint in the record, the Court cannot determine whether any amendments would be viable beyond those it has already concluded are futile.

8.) The Court overrules her objections to Judge Schultz's orders denying her leave to file a motion to amend.

## V.       Motion to Amend to Add Punitive Damages

Yang filed a motion seeking leave to amend her Complaint to add punitive damages. She argues that the Complaint currently contains sufficient allegations that the Defendants "exhibited a 'deliberate disregard for the rights or safety of others'" to merit punitive damages. (ECF No. 170 at 1 (quoting Minn. Stat. § 549.20, subd. 1(b)).) Her proposed changes amount to simply adding a line seeking punitive damages to her Prayer for Relief. (ECF No. 172-2 at 42.)

Before considering whether Yang may amend her Complaint to seek punitive damages, the Court first notes that it has now dismissed all claims Yang asserted against Hodnett and all but Counts IV and XII against Miller. (ECF Nos. 63, 86; *see supra* (dismissing remaining claims against Hodnett).) If Yang may seek punitive damages at all, she may only do so against RHI and on the remaining counts against Miller.

The next issue is whether Yang's Motion is procedurally proper. It is timely, as the scheduling order set March 15, 2021, as the date for amending the pleadings to add punitive damages. (ECF No. 110.) But it suffers from several procedural defects.

First, Local Rule 7.1(b) requires that a party filing a nondispositive motion, including a motion to amend, must contact the chambers of the judge hearing the motion to obtain a hearing date and file a notice of hearing and a meet-and-confer statement,

among other documents. D. Minn. L.R. 7.1(b), 7.1(b)(4)(A)(i). Yang did not initially file a notice of hearing on the motion; she has since rectified the defect.[11] (ECF No. 196.)

Second, Local Rule 7.1(a) requires that, before "filing a motion . . ., the moving party must, if possible, meet and confer with the opposing party in a good faith effort to resolve the issues raised by the motion." D. Minn. L.R. 7.1(a). After meeting and conferring, the movant generally must file a statement affirming that the meet-and-confer happened. *Id.* 7.1(a)(1). Yang did not file such a statement, nor does she explain why she failed to do so. RHI's counsel received a letter simply asking if RHI would "stipulate to allow amendment to the Complaint to add a claim for punitive damages. Please respond." (ECF No. 195.) RHI's counsel also received a few phone calls seeking to "meet and confer" on "discovery matters," to which RHI's counsel offered times to confer, but Yang's counsel never accepted or acknowledged the offer. (*Id.*; ECF No. 199 Ex. 1.) Yang's counsel also apparently faxed a similar letter to Miller's counsel; Miller's counsel claims never to have received the letter, but informed Yang's counsel that she would not agree to the request. (ECF No. 195.) The Court is unaware of any attempts Yang's counsel made to contact Hodnett's counsel regarding this motion.

---

[11] Although RHI's counsel faults Yang's counsel for being unaware that the Court was handling this motion, (ECF No. 198 at 4.), rather than Judge Schultz, Yang's counsel did, in fact, contact Judge Schultz's chambers for a hearing date on her motion. At the time this occurred, Yang's counsel would not have known that the Court would consider the matter, rather than Judge Schultz.

The Court concludes that Yang has violated Local Rule 7.1 by failing to comply with her meet-and-confer obligations before to filing her motion to amend. The Court has warned Yang about failing to comply with this obligation in the past and denied a previous motion to amend for that reason. (ECF No. 86 at 4–5); *Mgmt. Registry, Inc. v. A.W. Cos.*, No. 17-CV-5009 (JRT/KMM), 2019 WL 2024538, at *3 (D. Minn. May 8, 2019) (denying a motion to compel for failure to comply with a meet-and-confer requirement). The Court denies with prejudice her motion to amend for failure to comply with her meet-and-confer obligations.

Having determined that denial of Yang's motion to amend is proper for failure to comply with meet-and-confer requirements, the Court need not consider the substantive issues her motion raises. It notes, however, that to the extent Yang seeks punitive damages on any claims it has already dismissed, those proposed amendments are futile for the reasons stated above, and Yang already seeks punitive damages on several counts already in her Complaint, so the value of her general amendment to seek punitive damages on those claims is questionable.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.  Hodnett's motion for judgment on the pleadings (ECF No. 96) is GRANTED;

2.      Yang's motion to supplement the record (ECF No. 125) is DENIED;

3.      Counts IV and XIII of Yang's Complaint against Hodnett are DISMISSED

        WITH PREJUDICE;

4.      Defendant Theresa Hodnett is DISMISSED from the case;

5.      Yang's objections to Judge Schultz's orders (ECF Nos. 155, 163) are

        OVERRULED; and

6.      Yang's motion to amend the pleadings to seek punitive damages (ECF No.

        169) is DENIED WITH PREJUDICE.


Dated: March 23, 2021                    BY THE COURT:

                                         s/Nancy E. Brasel
                                         Nancy E. Brasel
                                         United States District Judge